UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFREY R.,

             Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

_____

**DECISION AND ORDER**

1:21-cv-00709-EAW

## INTRODUCTION

Represented by counsel, Plaintiff Jeffrey R. ("Plaintiff") commenced this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income benefits ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 23; Dkt. 25). For the reasons discussed below, Plaintiff's motion (Dkt. 23) is denied and the Commissioner's motion (Dkt. 25) is granted.

## BACKGROUND

Plaintiff protectively filed his application on May 23, 2019.  (Dkt. 8 at 134, 144).[1]

In his application, Plaintiff alleged disability beginning August 13, 2015.  (*Id*.).  Plaintiff's

application was initially denied on August 26, 2019, and then denied upon reconsideration

on January 27, 2020.  (*Id*. at 133-41, 144-54).  At Plaintiff's request, a hearing was held

before administrative law judge ("ALJ") Mary Mattimore.  (*Id*. at 15-28).  On September

9, 2020, the ALJ issued an unfavorable decision.  (*Id*. at 15-28).  Plaintiff then requested

review by the Appeals Council, which the Council denied on March 25, 2021, making the

ALJ's determination the final decision of the Commissioner.  (*Id.* at 5-10).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this

Court is limited to determining whether the SSA's conclusions were supported by

substantial evidence in the record and were based on a correct legal standard."  *Talavera*

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

§ 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is

supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the

claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir.

1990) (holding that review of the Secretary's decision is not *de novo* and that the

Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he

deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)

(citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant

is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467,

470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not

disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an

impairment, or combination of impairments, that is "severe" within the meaning of the Act,

in that it imposes significant restrictions on the claimant's ability to perform basic work

activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If

the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or

medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.     The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis and determined that Plaintiff had not engaged in substantial gainful activity since May 23, 2019, the application date.  (Dkt. 8 at 17).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: a bipolar disorder, post-traumatic stress disorder ("PTSD"), and a borderline personality disorder.  (*Id*.).  She also found that Plaintiff's obesity and opioid use disorder were non-severe impairments.  (*Id*. at 18-19).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 19-22).  Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform a full range of work at all exertional levels, except that he could perform no more than simple, routine work consistent with a specific vocational preparation ("SVP") of 1 or 2, make only simple workplace decisions, tolerate occasional interaction with supervisors and coworkers without any public contact or interaction, tandem or teamwork, or a production rate pace work.  (*Id*. at 22).

At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 26).  At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the occupations of a hospital cleaner, industrial cleaner, and a kitchen helper.  (*Id.* at 27).  Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of her decision.  (*Id.*).

## II.     The ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff asks this Court to remand this matter to the Commissioner solely for calculation and payment of benefits, or, in the alternative, to remand for further proceedings because the ALJ improperly rejected the opinion of his mental health counselor, and instead relied on the opinions of two non-examining State agency consultants.  (Dkt.  23-1 at 4-5).  Plaintiff further argues that the ALJ was required to contact Plaintiff's treating physician and hold a supplemental hearing following her receipt

of Plaintiff's additional medical records.[2]  (*Id.*).  For the reasons stated below, the Court

finds Plaintiff's arguments unpersuasive.

It is well-settled that when making an RFC assessment, an ALJ must consider all

the relevant evidence, including medical opinions and facts, claimant's physical and mental

abilities, non-severe impairments, and subjective evidence of symptoms that could

interfere with work activities on a regular and continuing basis.  20 C.F.R. § 416.945; *see*

*also Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984).  The ALJ must "weigh all of

the evidence available to make an RFC finding that [is] consistent with the record as a

whole," *Matta v. Astrue*, 508 F. App'x 53, 53 (2d Cir. 2013), and may reach a determination

that "does not perfectly correspond with any of the opinions of medical sources," provided

the ALJ's overall assessment is supported by substantial evidence and consistent with

applicable law.  *See Trepanier v. Comm'r of SSA*, 752 F. App'x. 75, 79 (2d Cir. 2018).

When the record contains competing medical opinions, it is the role of the Commissioner,

and not this Court, to resolve such conflicts.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d

Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to

resolve.").

---

[2]     Although supported by citations to caselaw, Plaintiff's arguments are not supported
by specific references to the record, nor does he provide a logical connection between his
conclusions and the relief sought.  The Court reminds counsel that "[i]t is not enough
merely to mention a possible argument in the most skeletal way, leaving the court to do
counsel's work, create the ossature for the argument, and put flesh on its bones."  *U.S. v.*
*Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).  Counsel is also reminded of his continuous
obligation to adhere to this Court's Local Rules, particularly Local Rule of Civil Procedure
5.5, which sets forth the requirements for legal briefs filed in connection with Social
Security disability appeals.  *See* Loc. R. Civ. P. 5.5.

In the present case, the ALJ analyzed three medical opinions of record, two of which—the opinions of the non-examining physicians—she found to be persuasive, and the third one—status update report of Plaintiff's treating therapist at Horizon Health Services Jennifer Mongiovi, LMHC ("Mongiovi")—the ALJ found to be somewhat persuasive.  (Dkt. 8 at 25-26).  Plaintiff argues that the ALJ improperly relied on the opinion of the non-examining physicians to formulate his RFC instead of relying on the opinion of his treating therapist who found him to be substantially more limited than determined by the ALJ.  (Dkt. 23-1 at 5).  Plaintiff points out that courts in this Circuit have been cautioned not to rely heavily on the opinions of non-treating and non-examining physicians, and implies that by doing so, the ALJ erred in formulating his RFC.  (*Id.*).  Although this proposition holds true in some circumstances, Plaintiff's argument is misplaced here.  *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("We have previously cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination."); *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability." (internal citation and quotations omitted)); *but see McGonagle v. Kijakazi*, No. 22-637, 2022 WL 17724696, at *1 (2d Cir. Dec. 16, 2022) (the ALJ reasonably concluded that the medical assessments made by physicians employed by the State Disability Determination Services were more persuasive than the opinions of plaintiff's treating psychiatric nurse and consultative examiner).

By making this conclusory argument Plaintiff completely disregards the 2017 amendments to the regulations that repealed the treating physician rule, which required the ALJ to defer controlling evidentiary weight to opinions or prior administrative medical findings of the claimant's treating sources. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). The amended regulations now require the ALJ to articulate how persuasive she finds all of the medical opinions and prior administrative medical findings contained in the record based on five factors, with the two most important factors being supportability and consistency. 20 C.F.R. § 416.920c(c); *see also Peets v. Kijakazi*, No. 21-3150, 2022 WL 17725391, at *1 (2d Cir. Dec. 16, 2022) (under the new regulations, the ALJ's declining to "afford controlling weight to a particular medical opinion is not a basis for second-guessing the ALJ's conclusions").

Contrary to Plaintiff's assertions, the ALJ here did not disregard the opinion of Mongiovi, but, instead, properly evaluated it in light of the factors contained in the newly amended regulations, specifically supportability, consistency, and nature and length of the therapist's relationship with Plaintiff, to determine that although the opinion was consistent with Plaintiff's subjective complaints, it contained no functional parameters, and was vague and inconsistent with the therapist's own treatment records. (Dkt. 8 at 25-26); *see also* 20 C.F.R. § 416.920c(c). Specifically, in her November 2019 status update report, Mongiovi indicated that Plaintiff's social skills and ability to relate to others were severely limited. (Dkt. 8 at 453-54). She did not elaborate on what that meant in functional terms and what Plaintiff's ability to function in a work setting would be in light of the severe

limitations she identified.  *See Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) (opinions of treating physicians were vague and conclusory when they did not speak to claimant's capabilities or limitations).  The opinion did indicate that Plaintiff had been in treatment since 2015, and though he was euthymic and oriented during that particular visit, he was generally malodorous and sometimes disheveled during treatment. (*Id.*).  Mongiovi further indicated that Plaintiff's presentation greatly depended on his mood, which was often demonstrated by his poor hygiene, thoughts of self-harm and harming others, depressed affect, lack of motivation, irritability, agitation and anger, excess energy, and insomnia that Plaintiff exhibited during depressive or manic episodes. (*Id.*).  She noted that despite being compliant with his medications, Plaintiff was consistently hypervigilant, suspicions and distrustful of others, operated on "protection mode," and avoided social connections. (*Id.*).

The ALJ found this opinion somewhat persuasive and acknowledged that although Mongiovi was Plaintiff's long-term mental health counselor whose assessment was consistent with Plaintiff's subjective complaints, her findings were inconsistent with her own treatment notes as well as Plaintiff's remaining mental health record. (*Id.* at 25-26). The Court does not find error in the ALJ's analysis of the opinion particularly in light of the therapist's treatment record issued just a few months prior to the November 2019 report in July 2019, when she indicated that Plaintiff showed marked improvements in all areas of functioning during the three years of treatment, achieved all of his goals, and made improvements in social functioning evidenced by his ability to make eye contact, meet with other counselors one on one, tolerate being in the waiting room, and take care of responsibilities such as follow up on his medical and dental appointments. (*Id.* at 377-78).

Moreover, contrary to Mongiovi's assessment, Plaintiff's treatment records from the other therapists at Horizon Health Services demonstrated that his appearance, grooming, and hygiene were adequate during treatment, and that he often had normal and clear speech, relaxed posture, appropriate and goal-oriented thought process and cognition, fair judgment and insight, and cooperative and pleasant behavior. (*Id.* at 328, 335, 381, 391, 402-03, 409-10, 427-28, 436-37).

While "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence," *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019), the record clearly demonstrates that Plaintiff's relapses in mental health functioning primarily occurred when he was not compliant with medications, while his proper medication intake yielded significant improvement of his symptoms, which included consistent mood and sleep patterns, and reduced or nonexistent suicidal or homicidal thoughts, depression, anxiety, and hallucinations. (*Id.* at 384, 411, 430, 438-39, 460, 466-67, 477, 490, 497). Because "the regulations explicitly state that treatment and methods used to alleviate symptoms, and how symptoms affect patterns of daily living, are relevant to the ALJ's assessment," the ALJ here properly considered the impact of Plaintiff's medication intake on his symptoms. *Snyder v. Comm'r of Soc. Sec.*, No. 22-277-cv, 2023 WL 1943108 (2d Cir. Feb. 13, 2023); *see also Alston v. Sullivan*, 904 F.2d 122, 127 (2d Cir. 1990) (the ALJ properly considered claimant's conditions that were controlled with medication to determine that the claimant was not disabled); *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("a remediable impairment is not disabling"). Notably, while reporting periodic fluctuation of his symptoms and drug use relapses, Plaintiff often admitted

"feeling good," and either denied having mania, depression, anxiety, or hallucinations altogether, or noted that his anxiety was "not too bad," and that he felt calmer while on medications.  (*Id.* at 385-86, 438, 460, 466-68).  Also important was the fact that Plaintiff's providers continued to prescribe the same course of treatment—mental health therapy and psychotropic medication—during the relevant period without resorting to more invasive treatment options, such as an outpatient or an inpatient treatment.  *See, e.g.*, *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (claimant receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms); *Thomas v. Comm'r of Soc. Sec.*, 479 F. Supp. 3d 66, 89 (S.D.N.Y. 2020) (courts "have specifically recognized that a pattern of conservative medical treatment, such as mental health treatment with medication and therapy but not in-patient or hospitalization care, is a proper factor for an ALJ to consider in evaluating a claimant's credibility." (internal citation and quotation marks omitted)).

Although the ALJ found Mongiovi's opinion somewhat persuasive, she relied on the therapist's findings regarding Plaintiff's severely reduced ability to interact with others when she limited him to occasional interaction with supervisors and coworkers, and no tandem/teamwork or interaction with the public.  (Dkt. 8 at 22); *see Schillo*, 31 F.4th at 78 ("The ALJ is permitted to discount the opinion of a treating physician if it is inconsistent with other substantial evidence.").  The Court finds that this finding, as well as the remainder of the RFC determination, was supported by substantial evidence, particularly by the treatment records of Plaintiff's therapists and Plaintiff's own admissions about being uncomfortable around other people, having bad temper and losing control of his emotions

when he felt he was being provoked by others, having problems getting along with supervisors and getting fired from past work, and responding to threatening situations with violence in the past. (*Id*. at 22, 26, 107, 114, 116, 248-49, 251-52, 315, 454). However, even though he did not attend group therapy meetings, Plaintiff regularly met with his mental health counselors, was cooperative and friendly during treatment sessions, socialized with his relatives and friends, dated other people, traveled to Buffalo to visit friends and partners, and did not have any encounters with law enforcement as he did in the past, all of which at the very least support the ALJ's determination that Plaintiff was able to tolerate occasional interaction with supervisors and coworkers without contact with the public. *See McGonagle,* 2022 WL 17724696, at \*2 (plaintiff was able to have no more than occasional contact with coworkers and the public when the record demonstrated her ability to understand and remember detailed instructions, have logical thinking, intact cognitive functioning and memory skills, and appeared attending and communicative with no signs of hallucinations, delusions, or bizarre behavior); *Matta*, 508 F. App'x at 55 (moderate difficulties in social functioning were consistent with the finding that plaintiff was capable of simple, routine, low-stress, and unskilled work with no more than minimal contact with co-workers, supervisors, and the general public).

The RFC determination was also supported by the other two opinions of record evaluated by the ALJ. Specifically, in August 2019, J. May, Ph.D ("Dr. May") opined that Plaintiff was moderately limited in the ability to deal with co-workers and the public to the extent that he was able to adequately handle only brief and superficial contact with them. (Dkt. 8 at 137-41, 420-21). Dr. May determined that even though Plaintiff's ability to

tolerate and respond appropriately to supervision was reduced, he was able to tolerate ordinary levels of supervision in the customary work settings. (*Id.*). Six months later, L. Dekeon, Ph.D., confirmed Dr. May's conclusions about Plaintiff's limitations when he opined that Plaintiff retained the ability to perform work-related tasks and activities in low/brief contact settings. (*Id.* at 148-49, 456). Even though neither physician examined Plaintiff, their findings were based on their review of Plaintiff's record and collectively supported the ALJ's determination that Plaintiff is capable of performing simple tasks with occasional interaction with supervisors and coworkers, but without any tandem/teamwork, or interaction with the public. *See e.g.*, *Cook v. Comm'r*, 818 F. App'x 108, 109-10 (2d Cir. 2020) (the ALJ did not err when he limited plaintiff to simple routine work with limitations in interaction with the public based on the consultative opinion that he could perform simple tasks independently and relate adequately with others); *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (the findings of a consultative examiner and a non-examining physician that plaintiff was only mildly and moderately impaired by his depression and anxiety supported the ALJ's conclusions that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).

Plaintiff also argues that following the ALJ's receipt of his additional medical records after the hearing, she was required to contact Mongiovi for another assessment and to hold a supplemental hearing. (Dkt. 23-1 at 5). The Court finds this argument equally unpersuasive. Specifically, the records received by the ALJ following the hearing were Plaintiff's treatment notes from Horizon Health Services documenting his treatment during

one month in the summer of 2020, which did not shed a light on Plaintiff's functional

limitations different than those assessed by the ALJ.  (Dkt. 8 at 458-00).

It has been well-established that "where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a complete medical history,

the ALJ is under no obligation to seek additional information in advance of rejecting a

benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotations omitted).

To be sure, Plaintiff is not alleging a gap in the record, nor is he suggesting that the

additional records created an inconsistency in the record that the ALJ was required to

resolve by contacting Plaintiff's treating sources or by questioning Plaintiff about his

treatment at the supplemental hearing.  Because Plaintiff provides no support for his

assertion that the ALJ was required to recontact Plaintiff's therapist to obtain an RFC

assessment from her, the Court is left in the dark as to Plaintiff's reasoning of why another

assessment was necessary.[3]  Although the ALJ found the status report of Mongiovi vague

and somewhat inconsistent with the record, the record before the ALJ was complete and

provided her with sufficient evidence to make a proper RFC determination.  *See Schillo*,

---

[3]     The Court notes that Plaintiff submitted additional medical records to the Appeals
Council for treatment that took place following the ALJ's decision, which contained an
RFC assessment issued by Mongiovi on February 19, 2021.  (Dkt. 8 at 46-97).  Because
neither the assessment, nor the rest of the supplemental records, relate to the period at issue,
the Appeals Council did not consider them when it denied Plaintiff's instant claim.  (*Id*. at
5-6).  For the same reasons and because Plaintiff has not raised an argument that the records
postdating the ALJ's decision warrant remand, the Court has not addressed them in its
analysis.  *See Matos v. Comm'r of Soc. Sec*., 618 F. App'x 14, 15 (2d Cir. 2015) (where
"there has been no showing, nor is there any reason to believe, that plaintiff's new evidence
is relevant to her condition approximately three-to-four years earlier," plaintiff must file a
new application for benefits).

31 F.4th at 76 (even though the ALJ has an affirmative duty to develop the record, particularly when there is a deficiency in the record, "a deficiency in reasoning by a treating physician is not the same as a gap in treatment records"); *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (the ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability") (internal citations omitted)).

Once the ALJ received the additional records she provided them to Plaintiff and advised him to submit written statements, comments, or questions about the evidence, or to request a supplemental hearing if we wished to. (*Id.* at 306-07). Plaintiff neither contacted the ALJ about the records, nor requested a supplemental hearing in the allotted amount of time. Having heard no feedback from Plaintiff following her receipt of his additional medical records, the ALJ properly entered the new evidence into the record and issued her decision. (*Id.*). Because the record does not suggest that Plaintiff could not understand English, or that his cognition, reading, writing, or comprehension skills were limited to the extent he was unable to understand the ALJ's instructions, and because he never asked the ALJ for further development of the record, the Court finds that Plaintiff's argument that a supplemental hearing was necessary is without merit. *See Lodge v. Comm'r of Soc. Sec.*, No. 12 Civ. 4651 (BMC), 2013 WL 3778812, at *4 (E.D.N.Y. July 19, 2013) (plaintiff was not entitled to a supplemental hearing when he "never asked the ALJ for further development of the record, and has barely alluded in his brief in this case to what further development efforts the ALJ should have undertaken," and when his request

was essentially an attempt to obtain a second opinion because he disagreed with a prior evaluation made by a physician).

In sum, Plaintiff presented no other evidence in the record that supported a more restrictive RFC than the one formulated by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff has a duty to prove a more restrictive RFC).  While the bulk of the record demonstrates that Plaintiff was limited in interacting with others, which was fully accounted for by the ALJ by restricting his contact with the public and limiting his interaction with supervisors and coworkers, it does not support any additional limitations.

Therefore, without providing proper support for his arguments, Plaintiff's challenges amount to a disagreement with the ALJ's findings, and while he may disagree with the ALJ's conclusions, it is ultimately Plaintiff's burden to prove a more restrictive RFC than the one assessed by the ALJ.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  (internal quotation marks omitted)). For the reasons discussed above, the ALJ reasonably concluded that Plaintiff failed to meet his burden of a more restrictive RFC.  As a result, the RFC determination is supported by substantial evidence.   Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motions for judgment on the pleadings (Dkt.

23) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. 25) is

granted.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 21, 2023
            Rochester, New York